# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DALY, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:23-cv-00933 |
| Plaintiff, | ) ) ) | Hon. Jorge L. Alonso<br>Magistrate Judge Heather K. McShain |
| - against - | ) ) | |
| GLANBIA PERFORMACE NUTRITION, INC. | ) ) ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>**

AMIN TALATI WASSERMAN, LLP
William P. Cole (pro hac vice pending)
Matthew R. Orr (pro hac vice pending)
515 South Flower Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 933-2330
Facsimile: (312) 884-7352

Manon L. Burns
Illinois Reg. No. 6329495
549 W. Randolph Street, Suite 400
Chicago, IL 60661
Telephone: (312) 466-1033
Facsimile: (312) 884-7352

Attorneys for Defendant Glanbia Performance Nutrition (NA), Inc. (f/k/a Glanbia Performance Nutrition, Inc.)

I.        **INTRODUCTION**

This case concerns the packaging of Defendant's think!® brand Creamy Peanut Butter High Protein Bars. Plaintiff John Daly alleges that the statement "NO ARTIFICIAL SWEETENERS■" on the product's packaging is misleading because the protein bars contain maltitol syrup (a sugar alcohol). As is plainly set out on the label, however, the phrase "artificial sweeteners" does not refer to maltitol syrup but rather to six specific sweeteners recognized by the FDA as artificial: sucralose, saccharin, aspartame, acesulfame potassium, neotame and advantame.[1] In fact, Plaintiff fails to disclose to the Court that the packaging statement "NO ARTIFICIAL SWEETENERS■" ties directly to the following explanatory statement on the package: "■Does not contain sucralose, saccharin, aspartame, acesulfame potassium, neotame or advantame." (Decl. of Martina Kelly ("Kelly Decl."), Exs. 1, 2 and 3.) Plaintiff does not claim that the product contains any of those sweeteners. Furthermore, the packaging expressly discloses to consumers that the product contains "MALTITOL SYRUP" in the ingredient list, and the nutrition facts panel discloses that the product contains eleven grams of sugar alcohols. (*Id.*) The packaging is not false or misleading, and there is no deception.

For many reasons, Plaintiff fails to state any claim:

- Plaintiff lacks standing to pursue injunctive relief. He does not allege any facts establishing that he faces any risk of future harm.

- Plaintiff lacks standing to bring any claims as to products he did not purchase. He alleges he purchased only the Creamy Peanut Butter product; he does not claim to have

---

[1] *See* Request for Judicial Notice ("RJN"), Ex. C (National Cancer Institute, *Artificial Sweeteners and Cancer*, https://www.cancer.gov/about-cancer/causes-prevention/risk/diet/artificial-sweeteners-fact-sheet).

ever purchased the other 10 varieties of think!® High Protein Bar products identified in the Complaint. "Plaintiff[] has no injury-in-fact caused by products that [he] did not buy, and therefore lack[s] standing with respect to those products." *Bakopoulos v. Mars Petcare US, Inc.*, No. 20 CV 6841, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021)

- All of Plaintiff's claims fail because he does not plead factual content plausibly establishing that reasonable consumers would be deceived. He pleads no facts establishing that reasonable consumers interpret "artificial sweeteners" to include maltitol syrup, rather than the six high-intensity sweeteners identified by the FDA, much less in the context of packaging that expressly discloses the maltitol syrup and explains the product does not include any of the six high-intensity sweeteners.
- The common law fraud claim fails for the additional reason that Plaintiff's scienter allegations are conclusory and insufficient.
- The unjust enrichment claim fails because Plaintiff does not plead facts establishing his legal remedies are inadequate.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that Defendant markets and sells a variety of Think! High Protein Bar products. (Dkt. 1-1, Compl., ¶ 6.) Plaintiff resides in Lemont, Illinois. (*Id.* ¶ 2.) He alleges that, on December 17, 2022, he purchased a box of Creamy Peanut Butter Think! High Protein Bars (the "Product") from a Meijer grocery store. (*Id.* ¶ 9.) He does not allege that he ever purchased any other variety of the Think! High Protein Bars product line.

As stated on the Product's packaging, the bars provide 20 grams of protein and 0 grams of sugar. (*Id.* ¶ 17; Kelly Decl., Ex. 1, 3.)[2] The packaging states, "NO ARTIFICIAL SWEETENERS■." (Kelly Decl., Ex. 1 and 2.) The "■" symbol leads to the following explanation on the packaging: "■Does not contain sucralose, saccharin, aspartame, acesulfame potassium, neotame or advantame." (*Id.*, Ex. 3.)

Plaintiff does not allege that the Product contains any sucralose, saccharin, aspartame, acesulfame potassium, neotame or advantame. Instead, he notes the Product contains Maltitol Syrup. (Dkt. 1-1, Compl., ¶ 7.) That is no revelation, as Defendant expressly discloses in the Product's ingredient list that the Product contains "MALTITOL SYRUP." (Kelly Decl., Ex. 3.)

Just three weeks after this alleged purchase, Plaintiff filed this putative class action suit.[3] He claims that, had he known the Product contained Maltitol Syrup—which he alleges is an artificial sweetener—he would not have purchased the Product or would not have paid a "price premium" for it. (Dkt. 1-1, ¶¶ 22, 54.) He attempts to assert the following claims on behalf of both a nationwide class and an Illinois subclass: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. ("ICFA"); (2) common law fraud; and (3) unjust enrichment. (*Id.* ¶¶ 31 and 32.)

## III. PLEADING STANDARDS

The court must dismiss a claim if it fails to state a claim upon which relief can be granted.

---

[2] Plaintiff included only a partial image of the Product's outer packaging in the Complaint. The Court may consider the complete outer packaging under the doctrine of incorporation by reference. *See Brownmark Films LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (if a plaintiff mentions a key document in his complaint, the defendant may then submit the document for the court's consideration on a Rule 12(b)(6) motion); *Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661-62 (7th Cir. 2022).

[3] This case is at least the fifth putative consumer class action lawsuit filed by this same Plaintiff (represented by the same counsel) in the last three years.

3

Fed. R. Civ. P. 8. Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). The complaint must state sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility only if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

The court does not accept as true "legal conclusions," "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678. A "naked assertion" devoid of "further factual enhancement" does not suffice. *Id.* (citation omitted). "Additionally, evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *BCBSM, Inc. v. Walgreen Co.*, 512 F.Supp.3d 837, 849-850 (N.D. Ill. 2021) (citation omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the court considers the pleadings, documents incorporated by reference in the complaint, and matters subject to judicial notice. *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017)

**IV.    ARGUMENT**

    **A.  Plaintiff Lacks Article III Standing to Pursue Injunctive Relief.**

Standing is a threshold requirement because it derives from the Constitution's limit on federal courts' authority. *Bazile v. Finance System of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). At the pleading stage, the plaintiff must allege facts plausibly establishing each element of standing. *Id.* The plaintiff must demonstrate standing separately for each form of relief sought.

4

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000); *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017).

Plaintiff has not pled facts establishing Article III standing to pursue injunctive relief. To seek prospective relief, the plaintiff must show he or she is likely to suffer future injury from the defendant's conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). That a person was previously harmed is insufficient by itself to establish standing to request injunctive relief. *Schirmer v. Nagode*, 621 F.3d 581, 585-86 (7th Cir. 2010); *see also Berni v. Barilla S.p.A*, 964 F.3d 141, 147 (2d Cir. 2020) (citation omitted); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014). "[A] plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Simic*, 851 F.3d at 738 (quoting *Lyons*, 461 U.S. at 102).

"[P]ast purchasers of a consumer product who claim to be deceived by that product's packaging . . . have, at most, alleged a past harm." *Berni*, 964 F.3d at 147. Since Plaintiff is now aware the think!® High Protein Bar products contain maltitol syrup, he "is not likely to be harmed by [Defendant's] practices in the future." *Camasta*, 761 F.3d at 741; *accord Hamidani v. Bimbo Bakehouse LLC*, No. 22-cv-01026, 2023 WL 167513, at *2 (N.D. Ill. Jan. 12, 2023) ("Plaintiff lacks risk of future deception by Defendants because, by bringing this suit, Plaintiff is now aware of any alleged misrepresentations regarding the Product."); *Geske v. PNY Technologies, Inc.*, 503 F. Supp. 3d 687, 702 (N.D. Ill. 2020) (dismissing claim for injunctive relief for lack of standing, observing that "[o]nce a plaintiff knows that a product is defective, he or she is unlikely to purchase it again, and therefore unlikely to sustain future harm"). In fact, Plaintiff does not even try to allege any risk of future harm to him. He does not allege any intention or desire to ever purchase the Product (or any other type of think!® High Protein Bar) in the future. Instead, he alleges these are

5

products he "did not want to buy." (Dkt. 1-1, ¶ 50.) He has failed to plead any facts establishing standing to seek injunctive relief.

### B. Plaintiff Lacks Article III Standing to Bring Claims Regarding Products He Did Not Purchase.

Plaintiff purports to bring his claims with respect to 11 different varieties of protein bars. (Dkt. 1-1, ¶ 6.) But he purchased only one variety of Defendant's many products: the think!® Creamy Peanut Butter High Protein Bars. (*Id.* ¶ 9.) He does not have standing to bring claims with respect to any products he did not purchase.

Under Article III, a federal court may resolve only "a real controversy with real impact on real persons." *American Legion v. American Humanist Assn.*, 139 S.Ct. 2067, 2103, 204 L.Ed.2d 452 (2019). The requirement that a claimant have standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The plaintiff must demonstrate that he or she has a "personal stake" in the outcome of the claim. *Jackson v. Dole Packaged Foods, LLC*, No. 3:22-cv-1448-DWD, 2022 WL 18027600, at *2 (S.D Ill. Dec. 30, 2022) (citing *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203, 210 L.Ed.2d 568 (2021)).

"The majority of courts in the Northern District of Illinois that have addressed this issue have determined that class-action plaintiffs are prohibited from overcoming the requirements of Article III standing simply by arguing that non-purchased products are substantially similar to purchased products." *Willard v. Tropicana Manufacturing Co., Inc.*, 577 F.Supp.3d 814, 824 (N.D. Ill. 2021) (collecting cases); *see also Bakopoulus v. Mars Petcare US, Inc.*, No. , 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021) ("Plaintiffs have no injury-in-fact caused by products that they did not buy, and therefore lack standing with respect to those products."); *Jackson*, 2022 WL

18027600, at *2 ("Substantially similar or not, [Plaintiff] does fail to allege that any of the other eight Dole products caused her harm or created an 'injury in fact.'").

*Bakopoulos* is instructive. In that case, the plaintiffs filed a putative class action attempting to bring claims regarding six different varieties of the defendant's "Nutro Limited Ingredient Diets" dog food. 2021 WL 2915215, at *2 & n.3. The plaintiffs had only purchased some of the varieties but argued they had "standing to bring claims on products that are substantially similar to those that injured them." *Id.* at *2. The court dismissed all claims concerning products they did not purchase, observing that the plaintiffs had no injury-in-fact caused by products they did not buy. *Id.* at *3. The court explained:

> Plaintiffs cite to several district court decisions where consumer-fraud claims based on substantially similar products survived until at least the class certification stage. [Citations.] Those cases are not controlling, and I find their reasoning unpersuasive. Whether these plaintiffs may be adequate class representatives for absent class members injured by similar products is a different question that the issue here. At this stage of the case, there is no class and plaintiffs cannot bypass the "irreducible constitutional minimum" of Article III standing for their individual claims. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs' claims relating to products they did not purchase are dismissed without prejudice for lack of standing.

*Id.* at *3; *see also Willard*, 577 F.Supp.3d at 824-25 (granting motion to dismiss claims regarding the varieties of Tropicana juice products the plaintiffs did not purchase; the court acknowledged the in-District split on the issue but was "persuaded by the reasoning of the in-District cases finding that class-action plaintiffs cannot overcome Article III's standing requirement simply by arguing that products are substantially similar"); *Jackson*, 2022 WL 18027600, at *2 (plaintiff lacked Article III standing to bring claims as to the varieties of Dole's Fruit Bowl products that she did not purchase).

As in *Bakopoulus*, *Willard* and *Jackson*, this Court should dismiss all claims as to products Plaintiff did not purchase.

7

**C. The ICFA Claim Fails Because Plaintiff Does Not Plausibly Allege Deception.**

To state an ICFA claim, a plaintiff must allege facts plausibly establishing (1) there is a deceptive act or practice by the defendant; (2) the defendant intends that the plaintiff rely on the deception; (3) the deception occurs in the course of conduct involving trade or commerce; (4) there is actual damage to the plaintiff; and (5) the deception proximately caused the damages. *De Bouse v. Bayer AG*, 235 Ill.2d 544, 550, 922 N.E.2d 309 (2009); *Zahora v. Orgain LLC,* No. 21 C 705, 2021 WL 5140504, at *3 (N.D. Ill. Nov. 4, 2021). An ICFA claim must meet the heightened pleading standard of Rule 9(b). *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 883 (7th Cir. 2005).

Under the ICFA, a statement is deceptive if it is likely to deceive reasonable consumers. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill.2d 45, 76, 879 N.E.2d 910 (2007); *Geske v. PNY Technologies, Inc.*, 503 F.Supp.3d 687, 705 (N.D. Ill. 2020). This requires more than the mere possibility that a label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner; the reasonable consumer standard requires a probability that a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled. *Geske*, 503 F.Supp.3d at 705. "[T]he allegedly deceptive [statement] must be looked upon in light of the totality of the information made available to the plaintiff." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citation omitted); *accord Davis*, 396 F.3d at 884.

On motions to dismiss, courts analyze whether a plaintiff has *plausibly* alleged reasonable consumers would be misled. *See, e.g., Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d. Cir. 2013) ("It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement [or label] would not have misled a reasonable consumer."); *Zahora*, 2021 WL 5140504, at *3; *Zarinebaf v. Champion Petfoods USA Inc.*, No. 18 C 6951, 2019 WL 3555383, at

8

*6 (N.D. Ill. July 30, 2019) ("courts routinely analyze whether statements like these are deceptive as a matter of law under the ICFA").

Here, Plaintiff does not plead factual content plausibly establishing a probability that a significant portion of ordinary consumers, acting reasonably in the circumstances, would be misled by the "NO ARTIFICIAL SWEETENERS∎" statement tied to the explanation "∎Does not contain sucralose, saccharin, aspartame, acesulfame potassium, neotame or advantame." (Kelly Decl., Ex. 2 and 3.) First, the Complaint does not include any well-pled factual content establishing what reasonable consumers understand the phrase "no artificial sweeteners" to mean, let alone that they use that phrase to describe sugar alcohols such as maltitol. This is fatal. There are numerous categories of sweeteners, such as traditional sugars like sugar cane or honey and high-intensity sweeteners like saccharin and aspartame. High-intensity sweeteners are significantly sweeter than sugar.[4] Consequently, very small amounts are needed to create the same level of sweetness as sugar.[5] The U.S. Food and Drug Administration currently recognizes several high-intensity sweeteners, including saccharin, aspartame, acesulfame potassium (Ace-K), sucralose, neotame, and advantame.[6] These high-intensity sweeteners are referred to in the common vernacular as "artificial sweeteners," and some consumers avoid them due to potential or perceived health concerns.[7] The Product does not contain *any* sucralose, saccharin, aspartame, acesulfame potassium, neotame or advantame. Plaintiff does not claim otherwise.

---

[4] *See* RJN, Ex. A (FDA, *High Intensity Sweeteners*, https://www.fda.gov/food/food-additives-petitions/high-intensity-sweeteners).
[5] *Id.*
[6] *Id.*
[7] *See* RJN, Ex. C (National Cancer Institute, *Artificial Sweeteners and Cancer*, https://www.cancer.gov/about-cancer/causes-prevention/risk/diet/artificial-sweeteners-fact-sheet

Maltitol, on the other hand, is a *sugar alcohol* that is lower in calories than sugar and does not promote tooth decay or cause a sudden increase in blood glucose.[8] It is not a high-intensity sweetener.[9] The Complaint contains no factual allegations plausibly establishing that ordinary consumers interpret the phrase "artificial sweeteners" to mean sugar alcohols such as maltitol (as opposed to high-intensity sweeteners), particularly where sugar alcohols are a desired sugar substitute because of their health and functional benefits.[10] Even the FDA does not consider maltitol to be an artificial sweetener. In its plain language guide to consumers about sugar alcohols (including maltitol), the FDA *distinguishes* between sugar alcohols and "artificial sweeteners," explaining that sugar alcohols "are commonly used in place of sugar and often *in combination with* artificial sweeteners."[11] Another federal agency, the National Cancer Institute—in an official publication addressing the question "What are artificial sweeteners?"—states that there are "[s]ix artificial sweeteners," which it identifies as "saccharin, aspartame, acesulfame potassium (acesulfame-K, or Ace-K), sucralose, neotame, and advantame."[12] Not maltitol.

Illinois courts have recognized that consumers have (and use) common sense in understanding types of sugars and sweeteners. In *Ibarrola v. Kind, LLC*, the plaintiff alleged the claim "no refined sugar" was misleading where the product contained cane syrup/evaporated cane juice and molasses, which do undergo some refining. 83 F.Supp.3d 751, 755 (N.D. Ill. 2015). The court deemed the plaintiff's interpretation of the label implausible and granted defendant's motion to dismiss, finding that the only reasonable conclusion is the word "refined" was a term of art

---

[8] *See* RJN, Ex. A.
[9] *Id.*
[10] *See* RJN, Ex. B (FDA, *Sugar Alcohols*, October 2021, https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/assets/InteractiveNFL_SugarAlcohols_October2021.pdf).
[11] *Id.* (emphasis added).
[12] RJN, Ex. C.

10

distinguishing between partially and fully refined sugars. *Id.* at 758. The court observed the plaintiff never plausibly alleged what she believed "no refined sugar" to mean, and that the implication that it meant the product contained only "naturally occurring" sugars was implausible, as a reasonable consumer would know that all sugar-cane derived sweeteners suitable for human consumption must be at least partially refined. *Id.* at 756-758.

Similarly, here, "artificial sweetener" is used as a term of art referring to high-intensity sweeteners. Plaintiff's mere *conclusion* that reasonable consumers would interpret "artificial sweeteners" to include maltitol syrup (like the plaintiff's conclusory allegation in *Ibarrola* that "no refined sugar" must mean sugar not refined *at all*) is not deemed true on a motion to dismiss. *Iqbal*, 556 U.S. at 678. Furthermore, advertising statements must be viewed in context. *Davis*, 396 F.3d at 884; *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (9th Cir. 2013) ("in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial"). Plaintiff omits the context from his Complaint. He conveniently fails to disclose to the Court that the Product packaging expressly ties the "NO ARTIFICIAL SWEETENERS▪" statement to the explanation "▪Does not contain sucralose, saccharin, aspartame, acesulfame potassium, neotame or advantame." (Kelly Decl., Ex. 2 and 3.) This statement is unambiguous. Plaintiff does not, and cannot, allege that maltitol syrup is sucralose, saccharin, aspartame, acesulfame potassium, neotame or advantame (the six substances commonly referred to as "artificial sweeteners").[13] There is simply no deception.

And while Plaintiff repeatedly alleges the Product contains maltitol syrup, he conveniently fails to mention anywhere in his Complaint that the labeling *expressly discloses* to consumers in

---

[13] *See* RJN, Ex. C.

11

the ingredients list that the Product contains maltitol syrup, along with a clear designation of Sugar Alcohol content in the Nutrition Facts panel. (Kelly Decl., Ex. 3.) *See Steele v. Wegmans Food Markets, Inc.*, 472 F.Supp.3d 47, 51 (S.D.N.Y. 2020) ("Those interested in the actual ingredients can read the list[.]"). Once again, "context is crucial." *Fink*, 714 F.3d at 742.

Complaints that ignore an advertising statement's context—and that fail to plead facts plausibly establishing reasonable consumers interpret the challenged statement in the way the plaintiff merely concludes—are routinely dismissed. *See, e.g., Wienhoff v. Conagra Brands, Inc.*, --- F.Supp.3d ---, No. 21-cv-00501-NJR, 2022 WL 4103974, at *14-15 (S.D. Ill. Sept. 8, 2022) (not plausible for reasonable consumers to believe a product contains a significant amount of milkfat when the label statement "Made with Real Milk*" led to the statement "*Made with Nonfat Milk"); *Cerretti v. Whole Foods Mkt. Grp., Inc.*, 21-cv-5516, 2022 WL 1062793, at *10 (N.D. Ill. April 8, 2022) (plaintiff failed to plead facts plausibly establishing reasonable consumers interpret "dipped in organic chocolate" to mean the coating is exclusively chocolate). Because Plaintiff has failed to allege facts plausibly establishing that a significant portion of reasonable consumers would be deceived by the Product's packaging, the ICFA claim fails as a matter of law.

### D. Plaintiff's Ancillary Claims Also Fail as a Matter of Law.

Plaintiff's common law fraud and unjust enrichment claims are based on the exact same theory of deception as the ICFA claim. Because he has failed to plausibly allege any misrepresentation (as already explained), the common law fraud and unjust enrichment claims fail for the same reasons as the ICFA claim. *See, e.g., Wach v. Prairie Farms Dairy, Inc.*, No. 21 C 2191, 2022 WL 1591715, at *6 (N.D. Ill. May 19, 2022) (court's conclusion the plaintiff had failed to plausibly allege the label was false or misleading was fatal to all of plaintiff's claims); *Chiappetta v. Kellogg Sales Company*, No. 21-CV-3545, 2022 WL 602505, at *9 (N.D. Ill. Mar.

1, 2022) ("Because Chiappetta has failed to plausibly allege deception (as we discussed with respect to Chiappetta's ICFA claim), her unjust enrichment claim must also fail."); *Zahora,* 2021 WL 5140504, at *5 (dismissing fraud and unjust enrichment claims for same reasons as ICFA claim: failure to plausibly allege deception).

However, the fraud and unjust enrichment claims also fail for additional reasons.

### 1. The fraud claim fails because Plaintiff's scienter allegations are conclusory and insufficient.

Plaintiff's common law fraud claim also fails because his conclusory, boilerplate allegations of scienter are insufficient. Plaintiff "must insert 'precision and some measure of substantiation into their allegations of fraud.'" *Quitno v. General Motors, LLC*, No. 1:18-cv-07598, 2020 WL 777273, at *2 (N.D. Ill. Feb. 18, 2020) (quoting *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC,* 836 F.3d 770, 776 (7th Cir. 2016)). Plaintiff repeatedly makes the conclusory, formulaic allegation that Defendant "knew or should have known" the "no artificial sweeteners" statement was false. (Dkt. 1-1, Compl. ¶¶ 27, 28, 47.) "But 'should have known' is the language of negligence; not fraud[.]" *United States v. Joel Kennedy Constructing Corp.*, 584 F. Supp. 3d 595, 625 (N.D. Ill. 2022). Moreover, allegations that the defendant "knew or should have known" about a fraud "are conclusory." *Id.*; *see also Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1165-1166 (N.D. Ill. 2022) (conclusory allegations of scienter fall short of pleading standards); *Wienhoff*, 2022 WL 4103974, at *8; *Chiappetta*, 2022 WL 602505, at *8. Plaintiff has failed to state a claim for common law fraud.

/ / /


/ / /

13

## 2. The unjust enrichment claim fails because Plaintiff does not plead facts establishing his legal remedies are adequate.

Plaintiff fails to state a claim for unjust enrichment because he does not plead any facts establishing that his legal remedies are inadequate. Under Illinois law, unjust enrichment is an equitable remedy. *Nesby v. Country Mut. Ins. Co.*, 346 Ill.App.3d 564, 567, 805 N.E.2d 241 (2004). "Because it is an equitable remedy, unjust enrichment is only available where there is no adequate remedy at law." *Id.*; accord *Gociman v. Loyola University of Chicago*, 41 F.4th 873, 886 (7th 2022). Also, to pursue any equitable relief in a federal court sitting in diversity, a plaintiff must comply with traditional equitable principles, including the requirement of demonstrating that the plaintiff lacks an adequate legal remedy. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962); *Guaranty Trust Co. of New York v. York*, 329 U.S. 99, 105-06 (1945); see also *Zachman v. Vohra*, No. 1:15 CV 5293, 2015 WL 7423783, at *7 (N.D. Ill. Nov. 23, 2015) (granting motion to dismiss where "Plaintiff has not pled that he has no adequate remedy at law"); *Francis v. Bankcard America, Inc.*, No. 93 C 5510, 1998 WL 160914, at *1 (N.D. Ill. Mar. 31, 1998) ("[T]he Court finds Plaintiff fails to state a valid claim because Plaintiff fails to allege absence of an adequate legal remedy.").

Plaintiff has failed to allege any facts even suggesting he lacks an adequate remedy at law. The Complaint never mentions the subject and never refers to the inadequacy of any legal remedy whatsoever. The unjust enrichment claim fails as a matter of law.

/ / /

/ / /

/ / /

/ / /

V.  **CONCLUSION**

    For the foregoing reasons, the Court should grant the motion to dismiss in its entirety.

Dated:  February 22, 2023

*/s/ Manon Burns*
AMIN TALATI WASSERMAN, LLP
William P. Cole (pro hac vice pending)
Matthew R. Orr (pro hac vice pending)
515 South Flower Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 933-2330
Facsimile: (312) 884-7352
William@amintalati.com
Matt@amintalati.com

Manon L. Burns
Illinois Reg. No. 6329495
549 W. Randolph Street
Suite 400
Chicago, IL 60661
Telephone: (312) 466-1033
Facsimile: (312) 884-7352
Manon@amintalati.com

*Attorneys for Defendant Glanbia Performance Nutrition (NA), Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of February, 2023, I caused the electronic filing of the foregoing document through the CM/ECF system. The aforementioned document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ *Manon Burns*
Manon Burns