**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JOHN DALY,

        Plaintiff,

     v.                                         Case No. 23 C 933

GLANBIA PERFORMANCE NUTRITION,           Judge Jorge L. Alonso
INC.,

        Defendant.

## Memorandum Opinion and Order

Plaintiff John Daly filed this lawsuit individually and on behalf of a nationwide class and an Illinois subclass against Defendant Glanbia Performance Nutrition, Inc., alleging that the packaging for Glanbia's think!® High Protein bars misleads consumers. Glanbia has filed a motion to strike Daly's nationwide class allegations (ECF No. 13) and a motion to dismiss Daly's complaint for failure to state a claim (ECF No. 11). For the reasons below, the Court grants Glanbia's motion to strike and grants in part and denies in part Glanbia's motion to dismiss.

## Background[1]

Glanbia Performance Nutrition has sold eleven different flavors of think!® brand High Protein bars (the "Protein Bars"). On December 17, 2022, Daly purchased a box of Protein Bars of the Creamy Peanut Butter flavor from a Meijer grocery store (presumably in or near Lemont, Illinois, where Daly resides).

---

[1] This background is taken from the alleged facts in Daly's complaint, which are accepted as true at this stage, as well as any uncontested facts, and Glanbia's exhibits—to which Daly has not objected. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016).

1

A label on each box of Protein Bars states, "NO ARTIFICIAL SWEETENERS■." The small black rectangle corresponds with the following disclaimer below the ingredients list on the back of each Protein Bar box: "■Does not contain sucralose, saccharin, aspartame, acesulfame, potassium, neotame, or advantame." The product does contain maltitol syrup, which is a synthetic chemical created by hydrogenating high maltose glucose syrup. A copy of the packaging is reproduced below:





Daly contends that Glanbia's advertising of its Protein Bars is misleading because reasonable consumers expect products advertised as containing no artificial sweeteners to be sweetened only with natural sweeteners, and maltitol syrup is synthetic and therefore is an artificial sweetener. Daly also asserts that Glanbia knew or should have known that maltitol syrup is not naturally occurring, and that ultimately it was misleading to market the Protein Bars as non-artificially sweetened. Daly alleges that Glanbia knew and intended to mislead customers because Glanbia employs professional chemists to create the chemical formulas used in Glanbia's products, who knew or should have known that maltitol syrup is not naturally occurring and that by adding maltitol syrup, they artificially sweetened the Protein Bars.

Based on these allegations, Daly sues Glanbia for: (Count I) a violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 ILCS 505/1–505/12; (Count II) common-law fraud; and (Count III) unjust enrichment. Daly seeks damages and injunctive relief under each count, and brings this action on behalf of a nationwide class and an Illinois sub-class. The nationwide class covers all persons in the United States that purchased the Protein Bars within five years prior to the filing of the complaint through the date of class certification, and the Illinois sub-class covers anyone in Illinois that purchased the Protein Bars during the same period.

## Discussion

Glanbia moves to strike Daly's nationwide class allegations because the ICFA does not apply extraterritorially and because the alleged nationwide class is unmanageable as to Daly's fraud and unjust enrichment claims. Glanbia also argues that the Court should dismiss Daly's claims because Daly lacks standing to pursue injunctive relief and to pursue any claim for Protein Bar flavors Daly did not purchase, and that Daly does not state a claim. The Court addresses each motion below.

### I.    Motion to Strike

As a preliminary matter, Daly argues that Glanbia's motion to strike is premature. In some circumstances, a court may strike class allegations at the pleading stage. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Federal Rule of Civil Procedure 23(c)(1)(A) states that "at any early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). If the challenge to class certification involves a factual dispute, then discovery is necessary and striking class certification at the pleading stage is premature. *Buonomo v. Optimum Outcomes,*

*Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014) (citations omitted). Conversely, if a defendant's challenge to class certification is based on an issue of law, it is proper to decide the class certification question at the pleading stage. *Kubilius v. Barilla Am., Inc.*, No. 18 C 6656, 2019 WL 2861886, at *2 (N.D. Ill. July 2, 2019) (citations omitted). And a court "need not delay a ruling on class certification if it thinks that additional discovery would not be useful in resolving the class determination." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011).

As explained below, Glanbia's motion to strike raises questions of law and concerns issues where additional discovery is unnecessary—and Daly offers no specific areas where additional discovery could materially impact certification. First, the issue of whether the ICFA applies extraterritorially is one of statutory interpretation, which is a question of law. *See United States v. Jackson*, 5 F.4th 676, 681 (7th Cir. 2021) ("Of course, any statutory interpretation problem presents a legal question."). Second, the choice-of-law issues presented for Daly's common-law claims are sufficiently settled to be resolved at this stage. Accordingly, Glanbia's motion to strike is not premature.

### A. Nationwide Class Allegations under the ICFA

Glanbia moves to strike Daly's nationwide class allegations under the ICFA because the ICFA does not apply to fraudulent transactions occurring outside Illinois. Glanbia believes that because the ICFA does not apply extraterritorially, it does not provide a cause of action for members of the proposed nationwide class that purchased the Protein Bars outside of Illinois. Glanbia relies on *Avery v. State Farm Mutual Auto Insurance Co.*, which clarifies that the Illinois "[g]eneral assembly did not intend the Illinois Consumer Fraud Act to apply to fraudulent transactions outside of Illinois." 216 Ill. 2d 100, 185, 835 N.E.2d 801, 853 (2005). Accordingly, courts in this District have recognized that ICFA does not apply extraterritorially to individuals

who purchase products outside Illinois. *See Kubilius*, 2019 WL 2861886, at *1 (N.D. Ill. July 2, 2019) ("[P]laintiff's claim under ICFA . . . has no extra-territorial application."); *Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL 5064732, at *2 (N.D. Ill. Oct. 9, 2019) ("Illinois statutes usually have limited territorial reach. The ICFA is no exception, and it does not apply to fraudulent transactions which take place outside Illinois." (internal quotation marks and citations omitted)).

To argue that the ICFA applies extraterritorially, Daly relies on *Clark v. TAP Pharmaceutical Products, Inc.*, 343 Ill.App.3d 538, 798 N.E.2d 123 (2003). However, *Clark* predates the superseding *Avery* decision from the Illinois Supreme Court—the Court therefore evaluates Daly's claims through *Avery* and subsequent cases relying on *Avery*.

Under *Avery*, a transaction occurs in Illinois when "circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." 835 N.E.2d at 845. That the defendant is headquartered in Illinois and allegedly designed the fraudulent scheme from its Illinois headquarters is insufficient to prove a transaction occurred in Illinois. *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009) (holding that the location of a business is not dispositive on the question of whether the ICFA applies); *Haught v. Motorola Mobility, Inc.*, No. 12 C 2515, 2012 WL 3643831, at *4 (N.D. Ill. Aug. 23, 2012) ("Although Motorola is headquartered in Illinois, this alone does not confer nonresident standing under the ICFA . . . . Nor does Haught's allegation that Motorola designed its allegedly deceptive scheme in Illinois confer standing under the Act." (citations omitted)).

In *Kubilius*, the court applied *Avery* to an ICFA class certification allegation similar to Daly's. There, the plaintiff purchased a jar of the Illinois defendant's allegedly deceptive pasta sauce in a New York supermarket. 2019 WL 2861886, at *1. The Court dismissed the plaintiff's

ICFA claims because the ICFA "has no extra-territorial application," and it was clear the transaction occurred in New York because that was where the plaintiff viewed and purchased the pasta sauce. *Id.* Here too, because it is not "difficult to identify the situs" of a transaction, the Court need not consider other factors to decide if the ICFA applies to a plaintiff's purchase. *Id.*

Since the ICFA does not apply extraterritorially, it does not provide class members that purchased the Protein Bars outside of Illinois with a cause of action. Therefore, this Court grants Glanbia's motion to strike Daly's nationwide class allegations for his ICFA claim.

### B. Nationwide Class Allegations under Common-Law Fraud and Unjust Enrichment

Glanbia also asks the Court to strike Daly's nationwide class allegations for his common-law fraud and unjust enrichment claims. Glanbia argues those nationwide class allegations violate Rule 23's commonality and superiority requirements because each class member will be governed by the common law of the state in which they purchased the Protein Bars. Daly counters that deciding class manageability at the pleading stage is premature, and that only Illinois law will control the nationwide class's fraud and unjust enrichment claims because Glanbia is headquartered in Illinois and carried out a scheme in Illinois to falsely label its Protein Bars, and Illinois thus has the most significant relationship to each class member's claim.

Federal courts in Illinois use Illinois' choice of law rules to determine the applicable substantive law. *See Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). For tort actions, Illinois uses the "most significant relationship" test. *Id.* (citing *Esser v. McIntyre*, 169 Ill.2d 292, 661 N.E.2d 1138, 1141 (1996)). Under this test, the court examines "(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Id.* (internal quotation marks omitted).

Unless another state has a more significant relationship to the parties or the occurrence, the law of the place of injury controls. *Id.* For consumer-products cases like this one, that typically means that the law of the place of purchase controls. *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008), *aff'd*, 612 F.3d 932 (7th Cir. 2010) ("Because Plaintiffs allege that the false representations were . . . where consumers received and relied upon those representations, . . . the place of each class member's gas purchase govern that class member's claims. Thus, applying Illinois' choice-of-law rules leads to the application of each state's consumer protection laws."). As a result, each litigant in the proposed nationwide class will be governed by the law of the state where they purchased a Protein Bar. Daly argues that Illinois nevertheless has the most significant relationship to this case because Glanbia's alleged scheme to fraudulently label its Protein Bars occurred in Illinois, where Glanbia is headquartered. But as recognized in a similar case, "[t]his characterization rings hollow," and Illinois choice-of-law will point to the substantive laws of the states in which each potential class member purchased Protein Bars. *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05 C 4742, 2006 WL 3754823, at *2 (rejecting similar argument and concluding that the parties' "relationship arose from plaintiffs' purchases . . . which occurred in plaintiffs' home states").

Where it becomes clear that the substantive laws of different states will govern members of the same class, courts still often decline to strike class allegations at the pleading stage if the challenging party has not shown how differences among state laws would be material. *Flaherty v. Clinique Lab'ys LLC*, No. 1:21-CV-03447, 2021 WL 5299773, at *7 (N.D. Ill. Nov. 15, 2021); *See Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 411 (N.D. Ill. 2021) ("Caterpillar has not shown that the conflicts of law it has identified are material enough to defeat certification at the pleading stage."); *Flaherty*, 2021 WL 5299773, at *7 ("Clinique has

not explained why the high-level differences that it identified are material enough to defeat certification at the pleading stage.") (internal quotation marks and citations omitted).

On the contrary, when a defendant offers an undisputed "in-depth analysis of the many ways in which the laws of the states that comprise the proposed classes conflict," courts may strike nationwide class allegations. *Cowen v. Lenny & Larry's, Inc*., No. 17 CV 1530, 2017 WL 4572201, at *4 (N.D. Ill. Oct. 12, 2017). The Seventh Circuit has warned that courts face difficulty in simultaneously applying various states' substantive laws in class actions and reasoned that when "claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002).

Here, Glanbia has detailed several material differences among various states' common-law fraud and unjust enrichment laws, to which Daly offers no rebuttal. Based on similar cases, the Court agrees with Glanbia and concludes that a nationwide class for Daly's common-law claims would be unmanageable. *See Kubilius*, 2019 WL 2861886, at *2–3 (striking nationwide class allegations for consumer fraud claims and noting that "[t]he Seventh Circuit has made clear that actions such as the one plaintiff proposes are disfavored"); *Muehlbauer v. General Motors Corp.*, No. 05 C 2676, 2009 WL 874511, at *5 (N.D. Ill. Mar. 31, 2009) ("Courts have long held that the laws of unjust enrichment vary from state to state and therefore are not appropriate for nationwide class action treatment." (citing cases)); *Miller v. General Motors Corp.*, 98 C 7386, 2003 WL 168626, at *1 (N.D. Ill. Jan. 26, 2003) ("Such differences have led the Seventh Circuit to hold that . . . fraud . . . suits may not proceed as nationwide classes." (citing cases)). The Court therefore grants Glanbia's motion to strike as to Daly's nationwide class allegations for his common-law fraud and unjust enrichment claims.

## II.    Motion to Dismiss

Glanbia's motion to dismiss contains three parts. First, Glanbia argues that Daly lacks standing to pursue injunctive relief and to file claims for Protein Bar flavors that he did not purchase. Second, he moves to dismiss Daly's ICFA claim because the "no artificial sweeteners" label would not mislead a reasonable consumer. Third, for Daly's common-law claims, it argues that Daly has not sufficiently pleaded scienter for common-law fraud and has not proven that other legal remedies are inadequate as a prerequisite for his unjust enrichment claim.

### A.  Article III Standing

Glanbia argues that Daly lacks Article III standing for injunctive relief, and cannot bring claims for flavors of Protein Bars other than Creamy Peanut Butter. Daly counters that he may seek injunctive relief as long as he pleads the likelihood of a recurring injury, and that the issue of bringing claims for other Protein Bar flavors is a class certification issue rather than a standing issue. The Court addresses each argument in turn.

Without evidence of continuing adverse effects, a plaintiff previously exposed to allegedly illegal conduct lacks standing to pursue injunctive relief. *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Consumers cannot seek injunctive relief if they know of an alleged deceptive practice because they are unlikely to incur future harm once they become aware of the fraud. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014).

The Court finds that Daly lacks standing to pursue injunctive relief. Daly's complaint alleges only past harms caused by Glanbia's purported deception. Since Glanbia allegedly deceived Daly only once, there is no reason to infer that he faces a "real and immediate threat" of being deceived again as required for federal standing. *Ulrich v. Probalance, Inc*., No. 16 C

10

10488, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) (citations omitted). The Court

therefore dismisses Daly's claims for injunctive relief without prejudice for lack of standing.[2]

Glanbia also argues that Daly lacks standing to sue based on Protein Bar flavors he did

not purchase. In this District, courts differ on how they approach this question. Some courts have

allowed claims for unpurchased products if the plaintiff proves that the unpurchased products are

substantially similar to those purchased. *See Ulrich*, 2017 WL 3581183, at *6 ("At least for

purposes of the present case, the Court is persuaded to . . . consider whether the products and

alleged misrepresentations are substantially similar."); *see also Wagner v. Gen. Nutrition Corp.*,

No. 16 C 10961, 2017 WL 3070772, at *5 (N.D. Ill. July 19, 2017); *Mednick v. Precor, Inc.*, No.

14 C 3624, 2014 WL 6474915, at *3 (N.D. Ill. Nov. 13, 2014).

Others have rejected the substantial similarity test and agree with Glanbia that plaintiffs

cannot assert claims for products they did not purchase. *See Willard v. Tropicana Mfg. Co., Inc.*,

577 F. Supp. 3d 814, 824 (N.D. Ill. 2021) (collecting cases) ("[T]he Court is persuaded by the

reasoning of the in-District cases finding that class-action plaintiffs cannot overcome Article III's

standing requirement simply by arguing that products are substantially similar."); *Bakopoulos v.

Mars Petcare US, Inc.*, No. 20 CV 6841, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021).

A third line of cases aligns with Daly's position and holds that that "[w]hether the named

plaintiffs may assert the rights of absent class members is neither a standing issue nor an Article

III case or controversy issue but depends rather on meeting the prerequisites of Rule 23

governing class actions." *Texas Hill Country Landscaping, Inc.*, 522 F. Supp. 3d at 408 (internal

quotation marks and citations omitted); *Clark v. Blue Diamond Growers*, No. 22-CV-1591, 2023

---

[2] Daly requests that the Court make any dismissal of his injunctive-relief allegations *without prejudice* so he may pursue injunctive relief in state court. Glanbia does not oppose this.

WL 4351464, at *6 (N.D. Ill. July 5, 2023) (collecting cases); *Friend v. FGF Brands (USA) Inc.*, No. 18 CV 7644, 2019 WL 2482728, at *3 (N.D. Ill. June 12, 2019) ("[W]hether plaintiff has Article III standing as to the products she did not purchase must be decided at class certification.") (citations omitted).

This Court agrees with Daly and follows the third approach, which it considers "the prevailing view" in this District. *Clark*, 2023 WL 4351464, at *6. Standing requires only that the plaintiff allege a concrete and particularized injury based on the defendant's conduct—which Daly undisputedly has done here. *See Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1000 (N.D. Ill. 2017). Whether Daly may represent Illinois class members for all Protein Bar flavors is a question primarily of typicality and commonality to be evaluated at the class certification stage, not at this stage. Therefore, the Court denies Glanbia's motion to dismiss as to unpurchased Protein Bar flavors.

### B. Daly's ICFA Claim (Claim I)

The Court next addresses Glanbia's motion to dismiss under Rule 12(b)(6). A motion under Federal Rule of Civil Procedure 12(b)(6) asks the court to dismiss a complaint for failure to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A claim meeting this standard is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This means the plaintiff must plead factual content allowing the court to draw reasonable inferences about the defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a Rule 12(b)(6) motion to dismiss, a court accepts the facts alleged in the complaint as true. *Id.* at 663. Conclusory statements and legal conclusions, however, are not accepted as true. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).

Daly's ICFA claim alleges a deceptive practice. Therefore, he must allege: (1) Glanbia committed a deceptive act or practice; (2) the deceptive act or practice occurred in the course of conduct involving trade or commerce; (3) Glanbia intended that Daly rely on the deception; and (4) the deceptive act caused Daly actual damages. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018). His complaint also must satisfy Federal Rule of Civil Procedure 9(b) by pleading with particularity the "who, what, when, where, and how" of the alleged deception. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019) (citation omitted). A court may dismiss an ICFA claim if the deceptive statement is not misleading as a matter of law. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001).

Daly argues that the "no artificial sweeteners" label on Glanbia's Protein Bars is deceptive because maltitol syrup is synthetic and a reasonable consumer expects a product containing "no artificial sweeteners" to be sweetened only with natural, not synthetic, sweeteners. Glanbia counters that a reasonable consumer instead expects a product containing "no artificial sweeteners" to be free from the specific high-intensity sweeteners recognized by the FDA, not sugar alcohols like maltitol. Glanbia further relies on the fact that the Protein Bars' back label clarifies that "no artificial sweeteners" means that the product "does not contain sucralose, saccharin, aspartame, acesulfame potassium, neotame or advantame."

Whether a label deceives a reasonable consumer is more often a question of fact than one of law. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761 (7th Cir. 2014) ("[W]hether an ad has a tendency to deceive is an impressionistic one more closely akin to a finding of fact than a conclusion of law.") (internal quotation marks and citations omitted). Still, when a plaintiff's interpretation of an allegedly duplicitous label is unreasonable, a court will dismiss the underlying claim at the pleading stage. *See, e.g.*, *Bober*, 246 F.3d at 940; *Ibarolla v. Kind, LLC*,

83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (dismissing ICFA claim because plaintiff's interpretation of "no refined sugar" to mean only naturally occurring, unrefined sugars was implausible because any sugar appropriate for human consumption must be partially refined).

Another case that examined a "no artificial sweeteners" label, though in another district and based on California consumer protection laws, is analogous and informative. *See Ivie v. Kraft Foods Glob., Inc.*, No. C-12-02554-RMW, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013). In *Ivie*, the label on the defendant's Country Time Lemonade mix stated, "no artificial sweeteners or flavors"; however, the product contained maltodextrin, an alleged artificial sweetener. *Id*. at *10. The defendant argued that because maltodextrin is not an FDA-recognized sweetener, it is not misleading to advertise Country Time Lemonade as having "no artificial sweeteners." *Id*. The court disagreed, finding that "the factual determinations of whether maltodextrin is used as a sweetener . . . in this particular product, and whether a reasonable consumer would have thus been misled by the 'no artificial sweeteners' . . . label, are inappropriate for determination on a motion to dismiss." *Id.* Courts in other districts have agreed that how an ingredient is used in a product is not a question to be resolved at the pleading stage. *See Cabrega v. Campbell Soup Co*., No. 18-CV-3827(SJF)(ARL), 2019 WL 13215191, at *11 (E.D.N.Y. Nov. 18, 2019) ("[W]hether the ingredients actually function as a preservative in the Products . . . are factual questions not properly resolved on a motion to dismiss at the pleadings stage."); *Morris v. Mott's LLP*, No. SACV 18-01799 AG, 2019 WL 948750, at * 4 (C.D. Cal. Feb. 26, 2019) ("[A]rguments [whether] the malic acid in [Defendant's] snacks functions exclusively as pH control agent and not as a flavor . . . are inappropriate for determination on a motion to dismiss."). Those courts thus denied a Rule 12(b)(6) motion where the plaintiff plausibly alleged that the ingredient in question functions in the alleged way. *See Cabrega,* 2019 WL 13215191, at

14

*11 ("[T]he FAC plausibly alleges that the ingredients at issue, *i.e.*, citric acid and ascorbic acid, actually function as a preservative in the Products. Again, plaintiffs need not plead specific evidence or extra facts to substantiate further that assertion, on a Rule 12(b)(6) motion to dismiss.") (internal quotation marks and citations omitted).

Here, Daly alleges that Glanbia hydrogenates starch to create maltitol which Glanbia then uses to sweeten the Protein Bars. Unlike the plaintiff in *Ibarolla*, 83 F. Supp. 3d at 756, Daly's interpretation of "no artificial sweeteners" is not fanciful. He alleges that "no artificial sweeteners" means that a product contains only natural sweeteners, and not maltitol syrup which is produced synthetically. Unlike in the case of "refined" sugars in *Ibarolla*, it is not necessarily the case that all sweeteners are "artificial" under Daly's meaning of the term—nor does Glanbia argue that. Here, Daly has sufficiently alleged its point to survive a motion to dismiss at the pleading stage.

Glanbia correctly notes that the "no artificial sweeteners■" label is not without context. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) ("[T]he allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff."). The small black rectangle corresponds with a disclaimer on the back of the Protein Bar boxes clarifying that "no artificial sweeteners" means "does not contain sucralose, saccharin, aspartame, acesulfame potassium, neotame or advantame." But this disclaimer does save Glanbia's motion to dismiss. In *Bell v. Publix Super Markets, Inc.,* 982 F.3d 468 (7th Cir. 2020), the Seventh Circuit court held that a back label ingredients list clarifying an ambiguous front label does not immunize a defendant from a consumer fraud claim. *Id.* at 477. The Seventh Circuit was skeptical that an "asterisk pointing to an ingredient list in fine print could save virtually any deceptive slogan." *Id.* at 482 (citation omitted). Instead, a reasonable consumer is

not expected to test front-label claims by examining the fine print on the back label, at least not as a matter of law. *Id.* at 477. Similarly, the Protein Bar boxes' referred-to list of "artificial sweeteners" does not automatically immunize Glanbia from consumers who purchase the product as a matter of law at this stage. Accordingly, the Court denies Glanbia's motion to dismiss Daly's ICFA claim.

### C. Daly's Common-Law Claims (Claims II and III)

Glanbia also seeks to dismiss Daly's common-law fraud and unjust enrichment claims. At the outset, Glanbia argues that if the Court dismisses Daly's ICFA claim, the Court must dismiss Daly's common-law fraud and unjust enrichment claims. But since the Court denies Glanbia's motion to dismiss Daly's ICFA claim, that argument is moot. Glanbia's other arguments for dismissing Daly's common-law claims concern each cause of action separately. The Court begins with Daly's common-law fraud claim.

The elements for fraud under Illinois common law are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induces the plaintiff to act [scienter]; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (citing *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 675 N.E.2d 584, 591 (1996)).

Glanbia focuses on the scienter element. In his complaint, Daly alleges that because Glanbia hires professional chemists to create its products and because these chemists know maltitol syrup is synthetic, Glanbia intended to falsely advertise the Protein Bars. Glanbia claims these allegations are conclusory and do not meet Rule 9(b)'s heightened pleading standard. In

response, Daly contends that his allegations go beyond making a bare inference of scienter and are enough to survive dismissal.

The question facing the Court resembles the one addressed in *Quiroz v. Beaverton Foods, Inc.*, No. 17CV7348NGGJO, 2019 WL 1473088, at \*10 (E.D.N.Y. Mar. 31, 2019).[3] There, the plaintiff alleged that the defendant knew its "[n]o Preservatives label was false because [u]pon information and belief, Defendant employs food scientists who are familiar with the basic properties of citric acid." *Id.* (internal quotations omitted). The plaintiff also alleged that the motive for committing fraud was increased sales. *Id.* The Court found this allegation too generalized to support an inference of scienter. *Id.* ("[K]nowledge that the Product's label is false and a generalized motive to increase sales of the Product . . . are not sufficient to support an inference of fraudulent intent."); *see also Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 587 (S.D.N.Y. 2021) (holding that "conclusory allegations" that "Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate" "fall short of the Rule 9(b) standard").

The findings in *Quiroz* and *Colpitts* align with this District's decision in *Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149 (N.D. Ill. 2022). In *Rudy*, the plaintiff alleged that the defendant's fraudulent intent was "evinced by its knowledge that the Product was not consistent with its representations." *Id.* at 1165. Relying in part on *Quiroz* and *Colpitts*, the court similarly found those allegations conclusory. *Id.* at 1165–66.

---

[3] Although *Quiroz* concerned common-law fraud under New York law, scienter is an element of common-law fraud in both Illinois and New York. *Rudy v. Fam. Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1165 (N.D. Ill. 2022). Both jurisdictions require that the defendant intend to commit fraud. *Id.*

For similar reasons, the Court dismisses Daly's common-law fraud claim. As just noted, there is a difference between alleged knowledge of a falsity and intent to commit fraud, and Glanbia's mere employment of scientists familiar with maltitol syrup is not enough to sufficiently allege scienter. Essentially, Daly alleges that Glanbia's intent to commit fraud is "evinced by its failure to accurately identify the Product on the front label when it knew its statements were not true nor accurate," which is not enough. *Rudy*, 583 F. Supp. 3d at 1165 (internal citation omitted). Daly thus has not gone beyond alleging Glanbia's mere alleged knowledge that it was misrepresenting the Protein Bars to sufficiently plead that Glanbia intended to commit fraud, nor has Daly pointed to any cases it believes are analogous and preclude dismissal. Under Rule 9(b)'s pleading standard, Daly has failed to adequately allege fraud to avoid dismissal. The Court thus dismisses Daly's common-law fraud claim for failure to state a claim.

As to unjust enrichment, Daly alleges that Glanbia was unjustly enriched when Daly conferred monetary benefits to Glanbia by purchasing the Protein Bars based on the false "no artificial sweeteners" label. In response, Glanbia argues that since unjust enrichment is an equitable principle, it is only available to litigants when other legal remedies are inadequate. Since Daly does not prove that other legal remedies are inadequate, Glanbia asks this Court to dismiss Daly's unjust enrichment claim.

Glanbia is correct that "[b]ecause it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604, 836 N.E.2d 681, 704 (2005) (internal quotation marks and citation omitted). In other cases, however, when a plaintiff brings an ICFA claim, a fraud claim, and an unjust enrichment claim, the court does not dismiss the unjust enrichment claim at the pleading stage.

*See Rudy*, 583 F. Supp. 3d at 1166. Instead, under Federal Rule of Civil Procedure 8(d)(2), courts allow plaintiffs to pursue unjust enrichment in the alternative. *See id.*; *Clark,* 2023 WL 4351464, at *9; *Terrazzino v. Wal-Mart Stores, Inc.*, 335 F. Supp. 3d 1074, 1087 (N.D. Ill. 2018). If a plaintiff cannot prove its ICFA or fraud claim, it still might prevail on an unjust enrichment claim. *Rudy*, 583 F. Supp. 3d at 1166.

Likewise, dismissing Daly's unjust enrichment argument at this stage is premature, and Daly may pursue that claim in the alternative. The Court therefore denies Glanbia's motion to dismiss as to Daly's unjust enrichment claim.

## Conclusion

The Court grants Glanbia's motion to strike Daly's nationwide class allegations (ECF No. 13). The Court grants Glanbia's motion to dismiss (ECF No. 11) as to Daly's common-law fraud claim (Count II) and Daly's request for injunctive relief, but denies the motion as to Daly's ICFA and unjust enrichment claims (Counts I and III), including for Protein Bar flavors other than Creamy Peanut Butter.

The Court also grants Daly's request for leave to file a first amended complaint, which Glanbia did not oppose. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Plaintiff's first amended complaint is due September 15, 2023. A telephonic initial status hearing is set for October 11, 2023, at 9:30 a.m. The parties are directed

to file a joint initial status report in accordance with this Court's case procedures by October 6, 2023.

**SO ORDERED.**                                      **ENTERED: August 31, 2023**

_____

**HON. JORGE ALONSO**

**United States District Judge**